Minute m (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1551 | **DATE** | 5/18/2000 |
| **CASE TITLE** | Warden vs. The McGraw-Hill Companies, Inc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to dismiss is granted as to counts I and II and denied as to count III. However, count III is remanded to the Circuit Court of Cook County. Enter Memorandum Opinion and Order. Any pending motion in this case is terminated as moot. Ruling set for 5/19/00 is vacated. All other schedules set in this case are also vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 19 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/18/2000 | |
| MPJ | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID WARDEN,           )
                        )
        Plaintiff,      )
                        )
    v.                  )   No. 00 C 1551
                        )
THE MCGRAW-HILL COMPANIES, )
INC.,                   )
                        )
        Defendant.      )

DOCKETED
MAY 19 2000

## MEMORANDUM OPINION AND ORDER

David Warden was denied severance benefits that he believes were due to him when Scientific Research Associates ("SRA"), his former employer, was sold, and he was terminated. He claims that he was owed these benefits under either a severance plan taken over by McGraw-Hill, which had purchased SRA, or under an agreement made in 1994, providing for a severance package under certain conditions, and that McGraw-Hill lied about those benefits that it had no intention of paying him to induce him to enter the agreement. He put in a claim for benefits in 1996, but McGraw-Hill denied his claim and appeal. Mr. Warden sued in state court for breach of contract with respect to the plan (count I) and the agreement (count II), and for fraudulent inducement (count III). McGraw-Hill removed to federal court, alleging that I have federal question



jurisdiction under ERISA, 29 U.S.C. § 1001, *et seq.*, which Mr. Warden concedes. McGraw-Hill moves to dismiss the complaint, and I grant the motion as to counts I and II, but deny it as to count III. However, since there is no basis for federal jurisdiction over count III, I remand it to the Illinois circuit court.

I.

Beginning in 1985, Mr. Warden worked for SRA, formerly a division of IBM, where he was covered by the IBM severance policy (the "Plan"). The Plan provided, among other things, for one week's pay for every six months of employment with SRA. The Plan stated that "[t]he intent of the separation allowance is to provide a transition payment to assist employees during the period when they are seeking employment . . . ." IBM sold SRA to Maxwell Publishing, Inc. ("Maxwell") in August 1988, which shortly thereafter purchased MacMillan Publishing Company ("MacMillan"), and Maxwell made SRA into a subsidiary of MacMillan. In December 1989, McGraw-Hill Publishing Companies ("McGraw-Hill") formed a joint venture with MacMillan comprised of subsidiary companies from each, including SRA. Although the severance policies of the IBM-era employees like Mr. Warden, who had been hired before July 1988, were officially "integrated" into those of the Macmillan-McGraw-Hill era employees under a memorandum of May 14, 1991, IBM-era employees were in

practice paid severance benefits at the lower IBM-SRA Plan rate. However, Mr. Warden states that the original IBM-SRA Plan is the plan that is applicable in his case.

In August 1992, McGraw-Hill purchased the subsidiaries involved in the joint venture, including SRA. In July 1994, in connection with McGraw-Hill's unsuccessful attempt to sell SRA to another firm, there was a large layoff, but Mr. Warden was retained. He entered into a written agreement on August 2, 1994 (the "Agreement"), promising him severance pay in the amount of $25,480.00 if he was not offered comparable employment or if he was fired by the new owner, other than for cause, within a year of the effective date of the sale. In exchange, Mr. Warden was to undertake additional work to promote the sale of SRA. By its own terms the agreement was null and void if the effective date of the sale came after December 31, 1994.

SRA was sold to Artspret, Inc., effective November 10, 1995. On that same date, Mr. Warden was terminated from SRA; the termination letter explained he would receive no severance benefits because Artspret would offer him comparable employment. Mr. Warden concluded that Artspret offered inferior benefits and so his employment was not comparable. In December 1995, he wrote to McGraw-Hill demanding his severance benefits at the rate of a

-3-

week's salary for every six month's employment with SRA, totaling about $25,000. McGraw-Hill denied his claim in a letter of March 6, 1996, and he appealed. McGraw-Hill denied the appeal in June 1996. This lawsuit followed.

II.

Mr. Warden concedes that ERISA preempts his state law claim for benefits under the Plan. Where an ERISA plan gives the administrator discretion to interpret the plan terms or determine benefits eligibility, as it does here, courts review the denial of benefit claims using the "arbitrary and capricious" standard. *Carr v. The Gates Health Care Plan*, 195 F.3d 292, 294 (7th Cir. 1999); see *Firestone Tire and Rubber v. Bruch*, 489 U.S. 101, 115 (1989). Under this standard, I am only to determine if the decision was completely unreasonable. *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1021 (7th Cir. 1998). There is some disagreement about how deferential a standard to apply, but I cannot see that anything rests on a more or less deferential "arbitrary and capricious" review here.

The administrator's interpretation was reasonable. McGraw-Hill stated that the reason that Mr. Warden would not receive severance benefits under the Plan was that he "would be receiving an offer of

-4-

employment from Artspret." The Plan says that "[t]he intent of the separation allowance is to provide a transition payment to assist employees during the period when they are seeking employment." Mr. Warden concedes that the IBM-SRA Plan with that provision governs here. Even under a less deferential standard, it was not "completely unreasonable" to interpret the Plan not to provide for a separation allowance when the employee has a reasonable offer of other employment at reasonable benefits.

The Plan does not say "comparable employment" or "employment with comparable benefits." It might well be unreasonable to deny separation benefits to a scheduling administrator like Mr. Warden on the grounds that there were jobs available as a burger flipper or a brain surgeon, or with no or radically inferior benefits. However, there is not such a disparity in the new job or benefits as to raise concerns about whether it would be reasonable to expect a terminated employee to take jobs not remotely commensurate with his qualifications and experience or that offered no benefits or manifestly inadequate ones in comparison to what he had received. I accept for the purpose of the motion that the benefits were inferior, but the job was about the same and the benefits were not

-5-

that inferior.[1]

Mr. Warden cites cases to show that there is no rule that a terminated employee must suffer unemployment to receive severance benefits; eligibility depends on the plan language. Here, however, the Plan language will bear the reading the administrator gave it. Mr. Warden might have argued that the governing plan was the MacMillan-McGraw-Hill plan, which provides for eligibility for benefits if the employee is "involuntarily terminated through no fault of his own." That language would have supported Mr. Warden's position. The memorandum of May 14, 1991 only states that the method of *calculation* of the severance for the IBM-era employees will be that of the the IBM-SRA Plan. It says nothing about how eligibility is determined. However, Mr. Warden did not make this argument, and he expressly concedes that the applicable plan is the old IBM-SRA Plan *in toto*.

The parties also debate whether Mr. Warden's termination was a Reduction in Force ("RiF") and whether it matters that severance benefits had not been paid when SRA changed hands before, but

---

[1] According to Mr. Warden's letter to McGraw-Hill of December 14, 1995, Artspret's health insurance was $40 more a month than McGraw-Hill's; Artspret did not offer tuition reimbursement, maternity/short term disability, or vision, unlike McGraw-Hill, and its vacation plan was "not announced" as opposed to McGraw-Hill's four weeks.

nothing rests on these issues. Even conceding for the sake of argument that Mr. Warden was terminated in a RiF and that no one had received such benefits when the company changed hands because no one had been terminated in one of these transitions, the administrator's decision was reasonable because it was based a plausible interpretation of the intent of the Plan as something meant to help carry a terminated employee until he got a new job.

III.

The defendants also move to dismiss count II, Mr. Warden's contract claim under the Agreement. McGraw-Hill contends that the Agreement falls under ERISA, but Mr. Warden is right that with the Agreement, the parties "contracted themselves out of ERISA" because "nothing in the agreement created the need for an ongoing administrative scheme. . . . ERISA pre-emption is, therefore, inapplicable." *Collins v. Ralston Purina Co.*, 147 F.3d 592, 604-05 (7th Cir. 1998). The agreement provides for the payment of a certain sum to a single employee in consideration for certain additional efforts for him and subject to a condition. It is a classic contract, not an ERISA plan.

However, this is a fleeting victory for Mr. Warden. The Agreement clearly stated that the provisions entitling Mr. Warden to payment would be "null and void" if the sale of SRA was not

effective by the end of 1994, as Mr. Warden concedes that it was not. The sale by that date was a condition precedent to McGraw-Hill's obligation to pay. *See Kilianek v. Kim*, 548 N.E.2d 598, 601 (Ill. App. Ct. 1989) (Under Illinois law, a condition precedent to the formation of a contract is one that must be met before a contract becomes effective.). The defendants therefore have no obligation to pay under the contract.

Mr. Warden responds by invoking "substantial performance," a doctrine, usually applied to building contracts, that provides that when a party performs the essential, material parts of a contract in good faith, the other party will be required to pay or perform even though there has not been strict compliance with the terms of the contract. *See Delta Construction, Inc. v. Dressler*, 381 N.E.2d 1023, 1027 (Ill. App. Ct. 1978). However, this doctrine is intended to excuse a defect in the performance of the first party--Mr. Warden--that is "both trivial and innocent." *Jacob & Young's, Inc. v. Kent*, 129 N.E. 889, 890 (N.Y. 1921) (Cardozo, J.). It is not supposed to make up for the failure of a condition precedent to payment. *Id.* A condition precedent can be attacked with an argument that it was waived, *see Delta*, 381 N.E.2d at 1029, and the failure of a contractual obligation resulting from a waiver might be made

up in virtue of the quasi-contract doctrine of promissory estoppel, see Arthur L. Corbin, *Corbin on Contracts* §§ 193-209, at 278-300 (one vol. ed. 1952); *A-Abart Elec. Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1404 (7th Cir. 1992); but Mr. Warden does not raise these arguments. Or Mr. Warden might have challenged whether there was in fact a condition precedent rather than a promise, because Illinois follows Williston's classic rule that "[w]here it is doubtful whether words create a promise or an express condition, they are interpreted as creating a promise." *LaGrange Federal Savings and Loan Ass'n v. Rock River Corp.*, 423 N.E.2d 496, 501 (Ill. App. Ct. 1981). But Mr. Warden does not dispute that the words create an express condition.

Mr. Warden's claim that McGraw-Hill breached an implied covenant of good faith and fair dealing by inducing him to sign a contract with a condition precedent when a reasonable person in the know, unlike Mr. Warden, "should have known" that the sale was "not likely to have been completed" really restates his fraudulent inducement claim rather than properly stating a breach of this covenant. What is alleged is not failure to perform the contract in good faith but inducement to enter it by fraud.

Mr. Warden's claims under the Plan and the Agreement must be dismissed.

IV.

Finally, I consider the fraudulent inducement claim, essentially that McGraw-Hill lied to Mr. Warden to get him to sign the agreement, promising him severance benefits that it had no intention of paying to get him to work harder to improve the salability of SRA.[2] McGraw-Hill hangs its hat on claim that the Agreement is preempted by ERISA, but, as explained, it is not. Since McGraw-Hill offers no further argument, I cannot dismiss the state law claim. However, further consideration of a state law contract claim is inappropriate for a federal court. When all federal claims are dismissed before trial, I "should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998); 28 U.S.C. § 1367(c), and I do.

---

[2] The damages for fraudulent inducement to enter into a contract where the plaintiff has no right to payment under the contract because of the failure of a condition precedent are, as Mr. Warden correctly pleads, reliance damages for extra work he assumed beyond the scope of his normal duties.

I GRANT McGraw-Hill's motion to dismiss counts I and II, and DENY the motion to dismiss count III, but I REMAND that count to the Circuit Court of Cook County, Illinois.

ENTER ORDER:

_Elaine E. Bucklo_
**Elaine E. Bucklo**
United States District Judge

Dated: May 18, 2000

Copies are being mailed to:

Michael E. Benz
Kreiter & Gibbons & Assoc.
70 W. Hubbard Street, #302
Chicago, IL 60610

James X. Bormes
Law Office of James X. Bormes
8 South Michigan, #2600
Chicago, IL 60603

Attorneys for Plaintiff

Michael Roumell
Epstein, Becker & Green
55 E. Monroe Street, 29th Fl.
Chicago, IL 60603

Attorney for Defendant